UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| CHRISTOPHER ANTHONY SAWYER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 2:22-cv-00071-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BOONE COUNTY, KY, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

*** *** *** ***

To hear police and prosecutors tell the story, on January 16, 2021, in Florence, Kentucky, plaintiff Christopher Sawyer pointed a gun at his girlfriend Amanda Baker while in her home, and threatened to kill her and burn down the residence. Sawyer also barred egress for Baker and her 7 year-old daughter. Six hours later Baker and her daughter escaped and she called 911. A standoff with police ensued when Sawyer barricaded himself inside the home. A SWAT team was deployed, and seven hours later Sawyer agreed to surrender to police, but not before he started a fire inside the dwelling and barely escaped through a window. The structure suffered significant damage as a result of the fire.[1]

Sawyer recalls things a bit differently. To be more precise, he takes issue with nearly every aspect of the police version of events and the prosecution's handling of the case against

---

[1] *See Commonwealth v. Sawyer*, No. 21-CR-00199 (Boone Cir. Ct. 2021), Response to Defendant's Motion for Bill of Particulars, dated May 27, 2021, and Commonwealth's Response to Defendant's Motions, dated Nov. 23, 2021. The docket for this case is available online at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=008&court=1&division=CI&caseNumber=21-CR-00199&caseTypeCode=CR&client_id=0. A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). *See also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

him.  In his 36-page, single-spaced amended complaint, [R. 8], Sawyer states that he did nothing at all to warrant the summoning of police (let alone provoke a standoff) or to justify the use of CS canisters (smoke grenades) by police, which he contends were likely the actual cause of the fire.  Sawyer holds forth that Baker lied to police that afternoon when she told them that he had used drugs, was in possession of a firearm, and had engaged in unwelcome sexual misconduct. Sawyer faults the police officers at the scene for failing to conclude that Baker was lying. Sawyer also details at length the various time periods when - during the lengthy standoff - the body cameras of various officers either shut off when the battery died, were intentionally turned off by the officer, or recorded only video but not audio.  [R. 8 at 3-6.]

Sawyer also contends that various officers justified calling in a SWAT team by calculating the "SWAT Activation Matrix" using information that they should have known was incorrect.  Still other officers, he continues, drafted criminal charges based upon allegations from Baker that they should have known were false.  Another officer later woke Sawyer up while he was still "high," did not read him his rights pursuant to *Miranda v. Arizona*, 348 U.S. 436 (1966), and tried to get him to confess.  Sawyer complains that several officers committed "perjury" by preparing reports which misquoted him, Baker, and others, or by misrepresenting evidence.  [R. 8 at 7-8, 13-16.]  Sawyer alleges that several officers altered the crime scene simply by being physically present there before the fire marshal had arrived and planting or removing evidence.  He also asserts, based upon asserted inaccuracies in the fire marshal's report, that the fire marshal must not have examined the scene at all, and committed perjury in his report regarding the cause of the fire.  [R. 8 at 9-11.]  Sawyer continues by asserting that several officers committed perjury by lying during their testimony in a January 2021 probable cause hearing and/or before the grand jury in March 2021.  [R. 8 at 11-13, 17-22.]  Finally,

Sawyer details evidence which he contends demonstrates that he did not start the fire or commit arson.  [R. 8 at 23-25.]

The two sides have aired these competing narratives before.  After his arrest, Sawyer was criminally charged in three cases in the District Court of Boone County, Kentucky.[2]  In March 2021, the matters were transferred to the Boone Circuit Court, Case No. 21-CR-199, where Sawyer stood indicted for First Degree Arson, four counts of First Degree Wanton Endangerment, two counts of First Degree Unlawful Imprisonment, Third Degree Terroristic Threatening, First Degree Strangulation, First Degree Burglary, Unauthorized Use of a Motor Vehicle, Possession of a Handgun by Convicted Felon, and First Degree Persistent Felony Offender.  Over the next year Sawyer extensively tested the prosecution's case, filing a handful of motions pressing some of the same or similar arguments set forth in his current complaint to challenge primarily the arson and wanton endangerment charges (some of which were based upon the same incendiary behavior).  *See* note 1, *supra*.  But as the case approached trial in April 2022, Sawyer reached an agreement with the prosecution to plead guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to one count of Third Degree Arson and three counts of First Degree Wanton Endangerment in exchange for the dismissal of the remaining charges.  The trial court sentenced Sawyer to five years imprisonment on each count, each sentence to be served concurrently with the others.

---

[2] *See Commonwealth v. Sawyer*, No. 21-F-00048 (Boone Dist. Ct. 2021), docket available online at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=008&court=1&division=DI&caseNumber=21-F-00048&caseTypeCode=FE&client_id=0; *Commonwealth v. Sawyer*, No. 21-F-00060 (Boone Dist. Ct. 2021), docket available online at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=008&court=1&division=DI&caseNumber=21-F-00060&caseTypeCode=FE&client_id=0; and *Commonwealth v. Sawyer*, No. 21-F-00129 (Boone Dist. Ct. 2021), docket available online at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=008&court=1&division=DI&caseNumber=21-F-00129&caseTypeCode=FE&client_id=0.

Sawyer filed his original complaint in this case one month later on May 23, 2022. *See* [R. 1 at 8.] In his Amended Complaint filed several months later [R. 8], Sawyer sued more than thirty defendants, including numerous officers of the Boone County Sheriff's Department ("BCSD"); officers of the City of Florence Police Department ("FPD"); members of the City of Florence Fire and Emergency Medical Services Department ("FFD"); and prosecutors of the Commonwealth's Attorney's Office in Boone County, Kentucky. *See* [R. 8 at 2-3.] Sawyer's wide-ranging factual allegations center around events occurring during the "standoff," the arson investigation conducted the next day, and the officers' testimony during probable cause and grand jury proceedings. *See* [R. 8 at 3-25.] Sawyer presses eighteen different claims asserting violation of his rights under the federal constitution and state law. [R. 8 at 26-35.]

## I

The Court must screen the amended complaint [R. 8] filed by Sawyer,[3] and dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). At this stage, the Court accepts all non-conclusory factual allegations in the complaint as true and liberally construes its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433,

---

[3] After Sawyer filed his original complaint, [R. 3], he submitted an "Amended Statement of Claim." *See* [R. 7]. But that document was only intended to replace the "Statement of Claim" portion of the original complaint. *See* [R. 3 at 9-15]. It was not itself an amended complaint: it did not name parties, assert claims, seek relief, and most importantly Sawyer did not sign it. *See* [R. 7]. It is the "42 U.S.C.A 1983 Redress Request Add On Detail," [R. 8], that Sawyer filed four months later which constitutes his amended complaint: it is styled and structured as a complaint, doubles the length of the document with expanded factual allegations, sets forth Sawyer's legal claims against 34 named defendants in 18 separately enumerated counts, clearly states a prayer for relief, requests a jury trial, and is signed by Sawyer. Sawyer was entitled to amend his complaint once as a matter of right, Fed. R. Civ. P. 15(a)(1), and this document is therefore the operative pleading in this matter.

437-38 (6th Cir. 2012).[4]  Based upon its review of Sawyer's complaint, the Court concludes that is should be dismissed.

**A**

Given the breadth of Sawyer's factual allegations and legal claims, the Court endeavors to parse his complaint into smaller, more manageable portions.

At the outset, Sawyer names as defendants several officers about whom he makes statements in the body of the complaint, but he does not even suggest that any of them engaged in any actionable wrongdoing, and he does not name them specifically as the target of his legal claims in any of the eighteen enumerated counts.  Sawyer's statements fall far short of stating a claim against these defendants.  *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) ("Even a pro se prisoner must link his allegations to material facts … and indicate what each defendant did to violate his rights …"); *Kensu v. Corizon, Inc.*, 5 F.4th 646, 653 (6th Cir. 2021) (noting that while "the federal pleading standard is quite liberal ... there is still a standard to meet."); *Kirkman v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." ).  The Court will therefore dismiss the claims against BCSD Deputies Mason McCord, Steven Waymeyer, and Daniel Donelan; BCSD Sergeant Mike Geis; BCSD Lieutenants Jason McGaha, Brett Dover, and Carl Dover; FFD Assistant Chief Chris Miller; and Boone County Commonwealth Attorney Louis D. Kelly.

---

[4] The matter has been pending for some time, and the Court notes a significant delay in completing this screening.  That delay is, to some degree, the predictable result of Sawyer's sweeping and exhaustive approach to pleading.  *See Phillips v. Ballard*, No. 5: 17-CV-301-REW (E.D. Ky. Oct. 19, 2018) (noting that "one of the disadvantages of a scattershot, kitchen sink approach to pleading is a prolonged screening period," and stating that "It is not that such an approach is disallowed (except of course when the claims are frivolous). ... But legality and advisability are two different things.") (*quoting Chrysler Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C 5273, 1995 WL 493436, at *1 (N.D. Ill. Aug. 15, 1995)) (cleaned up).

Some of Sawyer's allegations are plainly subject to prompt dismissal. For example, Sawyer complains that during the course of the prosecution, Assistant Commonwealth Attorneys Leanne Beck and Jason Stilz improperly joined together unrelated charges, declined to drop the charges for being a felon in possession of a firearm even though no gun was recovered from the crime scene, and asserts impropriety in their questioning of certain witnesses during the grand jury proceedings. *See* [R. 8 at 17-19.] However, a prosecutor enjoys quasi-judicial immunity from suit for acts performed within the scope of his duties in initiating and pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Therefore, "a former prisoner whose conviction has been set aside in collateral proceedings cannot maintain a § 1983 action against the prosecutor who had litigated the charges against him." *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997) (cleaned up). *See also Van de Kamp v. Goldstein*, 555 U.S. 335, 342-46 (2009) (noting that prosecutors enjoy absolute quasi-judicial immunity from suit for money damages for acts performed as prosecutors); *Adams v. Hanson*, 656 F.3d 397, 401-03 (6th Cir. 2011) (same). Because the actions complained fall squarely within a prosecutor's responsibilities during the judicial process, the claims against Beck and Stilz must be dismissed.

Further, Sawyer complains at length that several officers' body cameras were not recording at all times, or recorded only video without sound. But no constitutional provision requires law enforcement officers to record their activities at all, so the failure to do so in whole or in part fails to state a claim for violation of Sawyer's constitutional rights. *See Wooden v. City of Philadelphia*, No. CV 19-1054, 2022 WL 17724423, at *4 (E.D. Pa. Dec. 15, 2022) (collecting cases); *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F.Supp.3d 584, 597 (W.D. Ky. 2020); *Griffin v. Asla*, No. 3:21-CV-01036-MO, 2022 WL 4237275, at *9 (D. Or. Sept. 14, 2022) ("Plaintiff fails to explain how the officers violated his constitutional rights when

they turned off the audio."); *Mitchell v. Las Vegas Metro. Police Dep't*, No. 218CV00646RFBEJY, 2021 WL 808735, at *2 (D. Nev. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1894242 (D. Nev. May 11, 2021) (rejecting claim that a police department "should be held liable for the Officers' failures to 'preserve adequate body camera footage.'").  Such claims must also be dismissed.

## B

The scope of Sawyer's remaining claims must also be circumscribed, both factually and legally.  Factually, after his arrest Sawyer was charged with twelve criminal offenses and with being a persistent felony offender.  *See* note 1, *supra* (Commonwealth's Response to Defendant's Motions, dated Nov. 23, 2021, at 1-2).  However, Sawyer's complaint focuses only upon the standoff occurring on January 16, 2021, and the criminal investigation and prosecution flowing from those events.  *See* [R. 8 at 1, 3-25.]  Five of the charges brought against Sawyer arose from events occurring five days earlier on January 11, 2021, involving his girlfriend Amanda Baker.  Those include charges for strangulation (Count IX), burglary (Count X), wanton endangerment (Count XI), unauthorized use of a motor vehicle (Count XII), and persistent felony offender (Count XIII).  Sawyer does not discuss or assert claims related to them in his complaint, so the Court limits its discussion to January 16, 2021, events and charges.

Legally, Sawyer pleaded guilty to and was convicted of four of the eight remaining charges.  These included charges for arson for starting a fire in the home (Count I), one count of wanton endangerment for pointing a gun at Baker's head several times (Count IV), and two counts of wanton endangerment for placing two police officers at risk of serious physical injury or death from the fire in the home (Count V, Count VI).  *See* note 1, *supra* (Response to

Defendant's Motion for Bill of Particulars, dated May 27, 2021, and Final Judgment and Sentence of Imprisonment, dated April 18, 2022).

Sawyer's four criminal convictions bar him from asserting that the charges against him were improperly pursued and without merit because the evidence collected by officers was incorrect, unreliable, or manufactured. A petition for habeas corpus relief, not a civil rights action, is the proper means to attack a prior conviction. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). Of course, Sawyer wants money, not vacated convictions. *See* [R. 8 at 35.] But the Supreme Court has made clear that he cannot get one before he gets the other:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("A state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").[5]

---

[5] *Heck*'s favorable termination rule applies with equal force to convictions obtained through an *Alford* plea. *See Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) ("the *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as

Under *Heck*, such types of claims do not accrue until after the underlying convictions are invalidated. *McDonough v. Smith*, 588 U.S. 109, 114 (2019) ("The statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor."); *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013). In this case, the charges for arson and two counts of reckless endangerment were based upon Sawyer's actions in setting a fire in the mobile home; another count of reckless endangerment was based upon his threatening conduct directed at his then-girlfriend Baker. A significant portion of Sawyer's allegations and claims in his complaint are based upon the police investigation into these events from January through April 2021, testimony before the grand jury, and the criminal charges and resulting convictions for these offenses, and hence are barred by *Heck*. *Cf. Jacob v. Twp. of W. Bloomfield*, 192 F. App'x 330, 334 (6th Cir. 2006) (holding that under *Heck* a plaintiff cannot bring a § 1983 claim based upon an allegedly illegal search if it produced evidence used to obtain a conviction until that conviction is overturned); *Wischer v. Ludlow Police Dep't*, No. CV 16-192-DLB, 2017 WL 3723661, at *3 (E.D. Ky. Aug. 29, 2017) (dismissing under *Heck* civil complaint based upon asserted constitutional invalidity of police investigation and criminal prosecution against plaintiff); *Moore v. Toledo Police Dep't*, No. 3:22-CV-289, 2022 WL 2986101, at *2-3 (N.D. Ohio July 28, 2022) (*Heck* dismissal of claims challenging adequacy of police investigation and assertedly false reports presented to grand jury).[6]

---

admissions by the defendant), so it is irrelevant that Havens entered an *Alford* plea."); *Payton v. Normand*, 599 F. App'x 190, 191-92 (5th Cir. 2015) (same).

[6] Indeed, Sawyer previously filed a motion which made plain his desire to use this civil action to collaterally attack the validity of his four criminal convictions. *See* [R. 16.] In that motion, styled "Motion for Amendment to Include Jail Time Served," Sawyer states that he "was incarcerated from January 16, 2021 to May 1, 2023 because of the conspiracy and criminal acts committed against him by the defendants. ... we believe all parties are liable for the time spent incarcerated for crimes he didn't

Of course, as part of his plea agreement Sawyer pleaded guilty to several charges in exchange for the dismissal of others.  With respect to the dismissed charges, until very recently the rule in the Sixth Circuit was that if a single one of several criminal charges brought against a suspect is supported by probable cause, he could not pursue a malicious prosecution claim based upon his detention for other charges that are not.  *Cf. Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("What matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential justifications for the seizure).  As long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward. ... The same rules apply [to a malicious prosecution claim because] ... there's no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim.").  But the United States Supreme Court has recently rejected this view.  *Chiaverini v. City of Napoleon, Ohio*, 144 S. Ct. 1745, 1748, 1751 (2024) ("The question presented here arises when the official brings multiple charges, only one of which lacks probable cause.  Do the valid charges insulate the official from a Fourth Amendment malicious-prosecution claim relating to the invalid charge?  The answer is no: The valid charges do not create a categorical bar. ... Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's charge by charge.").[7]  Therefore, and in light of the *Chiaverini* decision, *Heck* presents no bar to the present assertion of claims based upon the charges that were dismissed.[8]  *Compare Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir.

---

commit of Arson and 3 counts of Wanton Endangerment from the smoke of the fire." *See id.* at 1-2.  This is precisely what *Heck* forbids.

[7]  As the Supreme Court did, this Court "leave[s] for another day the follow-on question of how to determine in those circumstances whether the baseless charge caused the requisite seizure."  *Id.* at 1748.

[8]  Some courts previously held that *Heck's* "favorable termination" rule requires more than mere dismissal of criminal charges, but a dismissal that is affirmatively indicative of innocence.  *Cf. M.G. v.*

2023) (holding that the plaintiff "cannot allege a favorable termination of his criminal proceedings for purposes of his malicious prosecution claim," which was based upon his acquittal of a drug sale charge, where "although Barnes was acquitted of the drug sale charge, he was convicted of the drug possession charge.").

## C

With that narrowed focus, the Court next considers the claims set forth in the eighteen enumerated counts of the complaint. This task is complicated by the fact that Sawyer's numbered "counts" do not (as they are designed to do in a complaint) state discrete legal claims, and they do not always correspond coherently to separable facts. Still, with some dissection the nature of the claims asserted and their general factual basis can be discerned. At the outset, the Court will dismiss the seven "claims" set forth in Count II, Count IV, Count VI, Count VIII, Count XIII, Count XV, and Count XVII on procedural grounds. In each of these seven counts, Sawyer merely repeats the allegations and claims set forth in the count immediately preceding it, but requests punitive rather than compensatory damages. Such redundancy in pleading is unnecessary. Because these counts do not set forth any legal claim independent of one already pleaded, but merely request an additional remedy, they will be dismissed as duplicative. After all, Sawyer requested exemplary damages at the conclusion of his amended complaint. *See* [R. 8 at 35.] That demand is sufficient to preserve his request for that remedy.

---

*Young*, 826 F.3d 1259, 1262 (10th Cir. 2016) ("To satisfy the [favorable termination] element ..., the plaintiff must show more than just the withdrawal or vacating of criminal charges - the plaintiff must demonstrate that the criminal proceedings were dismissed for reasons indicative of innocence ...."). But the Supreme Court has recently rejected this view as well: "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).

**D**

The Court next addresses Sawyer's five claims of excessive force, which he collectively asserts in Count I, Count VII, Count IX, Count XI, and Count XII.  In these counts, Sawyer: (1) contends that the circumstances at the standoff did not warrant activating a SWAT team at the home, *see* [R. 8 at 26, 29]; (2) claims that officers used excessive force by firing more CS canisters (smoke grenades) into the home than was reasonably necessary, *see id*.; and (3) alleges that officers then intentionally set fires in the house, while he was still in it, in an effort to burn it down and murder him, *see* [R. 8 at 29-30].  Sawyer asserts claims for excessive force under the Fourth Amendment pursuant to 42 U.S.C. § 1983 in Count I, *see* [R. 8 at 26]; criminal negligence, arson, and attempted murder in Count VII, *see* [R. 8 at 29-30]; violation of unidentified statutory civil rights in Count IX, *see* [R. 8 at 32]; a conspiracy to cover up the use of excessive force pursuant to 42 U.S.C. § 1983 in Count XI, *see* [R. 8 at 33]; and the intentional infliction of emotional distress by unnamed officers for deploying CS gas canisters without justification in Count XII, *see* [R. 8 at 33].[9]

The Court will dismiss all of these claims, although the reasons for doing so varies depending upon the particular allegation.  First, Sawyer's allegation that there was insufficient justification to "activate" a SWAT team fails to state any actionable claim because he does not allege that *any* force was actually applied to him simply by virtue of the SWAT team's presence

---

[9]  Sawyer also invokes the Fifth Amendment and the Eighth Amendment as a basis for some of these claims, *see* [R. 8 at 1-2, 26], but neither applies here.  The Fourth Amendment applies to Sawyer's excessive force claims because they arose prior to both detention and conviction; in contrast, the Fourteenth Amendment only applies after a suspect is detained after a probable cause hearing, and the Eighth Amendment's prohibition against cruel and unusual punishments is only implicated once the plaintiff is serving a term of imprisonment.  *See Aldini v. Johnson*, 609 F.3d 858, 864-67 (6th Cir. 2010) (*citing Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)).  The due process protections encompassed in the Fifth Amendment apply only to the actions of the federal government, not state or local governments, and Sawyer therefore fails to state a viable claim under that provision.  *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 (6th Cir. 2000).

during the standoff.  *Cf. Baker v. Welker*, No. 09-60169-CIV, 2009 WL 10675097, at *5 (S.D. Fla. Mar. 18, 2009) (dismissing excessive force claim against two officers who chased but failed to apprehend defendant as he fled because "the force applied by Fortunato and Wendt in attempting to detain Baker was not only *de minimus*, it was entirely absent."); *Navratil v. Parker*, 726 F. Supp. 800, 803 (D. Colo. 1989) ("The mere presence of a police dog, while intimidating, is not excessive force.").

Second, Sawyer appears to assert three claims under Section 1983: (1) in Count I, that four officers used excessive force by using more smoke grenades than was reasonably necessary under the circumstances, *see* [R. 8 at 26]; (2) in Count IX,[10] that all 34 defendants used excessive force and tried to kill him, *see* [R. 8 at 32]; and (3) in Count XI, that all 34 defendants engaged in a conspiracy to cover up the excessive use of force, *see* [R. 8 at 33].

Sawyer's excessive force claims under Section 1983 will be dismissed because they are barred by the statute of limitations.[11]  Because Section 1983 does not provide its own limitations period, federal courts apply the most analogous statute of limitations from the state where the events occurred.  *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012).  The events about which

---

[10]  In this count Sawyer asserts that this conduct violated his "statutory civil rights."  Sawyer does not provide, and the Court is unaware of, any civil rights conferred by statute that evidently apply to matters he alleges, so the Court assumes that he refers to Section 1983: while Section 1983 does not itself create substantive rights, it provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[11]  To the extent that Sawyer asserts *only* the excessive use of force during his arrest, his present assertion of these claims is not precluded by *Heck*'s deferred accrual rule.  *Cf. Schreiber v. Moe*, 596 F.3d 323, 334-35 (6th Cir. 2010) ("Generally speaking, a claim of excessive force does not necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable."); *see also Hodge v. City of Elyria*, 126 F.App'x 222, 225 (6th Cir. 2005) (explaining that typically the statute of limitations for a claim alleging an excessive use of force during arrest claim begins to run on the date of the alleged use of excessive force).  However, some aspects of Sawyer's claims are plainly barred by *Heck*.  For instance, in Count VII Sawyer alleges that police officers intentionally set fires in the home, *see* [R. 8 at 29-30], implying that it was these fires – not the arson to which he pleaded guilty – that caused the fire in the house.  This *Heck* forbids, and the Court does not consider such claims because they are prematurely asserted unless and until Sawyer's conviction for arson is vacated.

Sawyer now complains occurred in Kentucky; therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009). Sawyer's claims accrued on January 16, 2021, the date when the assertedly excessive force was applied. *Cf. Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (holding that ordinarily a claim under the Fourth Amendment that excessive force was used during the course of an arrest accrues at the time of arrest); *Michel v. City of Akron*, 278 F. App'x 477, 479-80 (6th Cir. 2008) (holding that a Fourth Amendment claim under § 1983 begins to run at the time of the search or seizure). Sawyer was therefore required to file suit within one year, by January 16, 2022. Under the prison mailbox rule, Sawyer's complaint is deemed filed on May 23, 2022, the date he signed it while confined at the Boone County Jail.[12] *See* [R. 3 at 1, 8.] Because the limitations period for these claims expired four months before he filed his complaint, they are time barred and must be dismissed.[13]

In Count VII, Sawyer accuses certain defendants of "criminal negligence," "arson," and "attempted murder." *See* [R. 8 at 29-30.] But those offenses are crimes, not civil claims, and Sawyer lacks standing to assert them. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). If the Court indulgently construes Sawyer's claims as asserting state common law torts of negligence, assault, and battery, those too are barred by the applicable one-year statute of limitations. *Cf.*

---

[12] Sawyer was incarcerated at the time, and under the "prison mailbox" rule "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. ... absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

[13] Independent of the limitations bar, Sawyer's conspiracy claim fails to satisfy minimum pleading requirements. "Conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Pahssen v. Merrill Cnty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012). Sawyer fails to specifically identify the alleged conspiracy's participants, objects, and means, and thus fails to state a viable claim. *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

*Shaw v. Handy*, 588 S.W.3d 459, 462 (Ky. Ct. App. 2019) (applying one-year limitations period in Ky. Rev. Stat. 413.140(1) to claims of negligence, assault and battery under Kentucky law); *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001) (same).

Finally, in Count XII Sawyer contends that unnamed BCSD and FPD officers intentionally inflicted emotional distress upon him by deploying CS gas canisters and OC spray without justification. He then asserts, without explanation, that BCSD Sheriff Michael Helmig and the unnamed FDP Chief are liable for the tort of outrage based upon the conduct of their unidentified subordinates. *See* [R. 8 at 33]. Other deficiencies aside, Sawyer fails to state a claim for the tort of outrage under Kentucky law. Because the tort is a "gap-filler," the Kentucky courts have long held that "if a set of facts establishes a traditional tort, by definition it cannot establish intentional infliction of emotional distress." *Childers v. Geile*, 367 S.W.3d 576, 584 (Ky. 2012). Here, Sawyer alleges that the officers "continued throwing in CS gas and OC spray even though the Plaintiff had his hands up" and that this conduct "caused the Plaintiff to suffer physical and emotional distress ..." [R. 8 at 33.] Where, as here, the facts alleged amounted to assault, battery, and/or other traditional torts, a claim for the tort of outrage will not lie. *Shaw v. Handy*, 588 S.W.3d 459, 462 (Ky. Ct. App. 2019) (*citing Degolia v. Kenton County*, 381 F. Supp. 3d 740, 772 (E.D. Ky. 2019)). This claim will therefore be dismissed.

### E

The Court will also dismiss the four claims asserted in Count X, Count XIV, and Count XVI. In these counts, Sawyer seeks to hold the City of Florence, Kentucky; Boone County, Kentucky; FFD Chief Knoll; BCSD Sheriff Helmig; and the unidentified Chief of the FPD liable for the alleged misdeeds of their employees. While Sawyer states in the titles to these counts that he asserts these claims against all named defendants, the body of them makes plain that he

instead only relies upon the alleged actions of "all defendants" as a predicate to impose liability upon the municipal defendants and/or supervisory officers. *See* [R. 8 at 32, ¶¶ 85, 86; R. 8 at 34, ¶ 95.] In any event, attempting to hold all of the defendants liable under the identified theories would plainly fail as a matter of law. *See Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019) (noting that municipal liability may only be asserted against a city or county, not individual defendants); *Phillips v. Ballard*, No. 5:17-CV-301-REW, 2019 WL 2359671, at *19 (E.D. Ky. June 4, 2019) (noting that "a 'failure to train' claim cannot be used to circumvent the *respondeat superior* liability bar for supervising officials.") (*citing Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 117 S. Ct. 1382, 1391 (1997)); *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.").

The first of these claims is found in Count X, where Sawyer states that the city and county are liable for constitutional torts committed by their officers because, he claims, it was their "policy and practice" to authorize and encourage the officers to use excessive force and then cover it up. [R. 8 at 32, ¶ 84.] The "policy and practice" language plainly evokes the municipal liability theory established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, a municipality or county government can be held liable under Section 1983 when its employees cause injury by carrying out the county's formal policies or informal customs. *Monell*, 436 U.S. at 694.[14]

But to state a viable claim under *Monell* against a municipality, a plaintiff must identify in his complaint, in specific terms, the policy or custom which he alleges caused his injury. *Jordan v. City of Detroit*, 557 F. App'x 450, 454 (6th Cir. 2014) ("To succeed on a § 1983 claim

---

[14] A municipality can also be held liable under Section 1983 for harms caused by a direct action of the municipality itself, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), but Sawyer makes no such allegation here.

against a municipal defendant, a plaintiff must identify the policy, connect the policy to the County itself and show that the particular injury was incurred because of the execution of that policy.") (cleaned up); *Anthony v. Roberson*, 26 F. App'x 419, 422 (6th Cir. 2001). Here, in Count X Sawyer merely refers back to the circumstances of his arrest and states that all of the actions by all of the defendants were taken pursuant to an unidentified city or county policy.[15] Such sweeping and conclusory allegations, unsupported by any specific facts indicating that the alleged policy actually exists and identifying its terms, scope, and application, are wholly insufficient to state a viable *Monell* claim. *Cf. Sistrunk v. City of Hillview*, 545 F.Supp.3d 493, 501 (W.D. Ky. 2021) (holding that "a plaintiff may not simply include a *Monell* claim in his Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the municipality. Rather, Plaintiff must allege some actual facts suggesting as much.") (cleaned up); *Dillon v. Hamlin*, No. 1:23-CV-103, 2024 WL 707289, at *5 (S.D. Ohio Feb. 21, 2024) (dismissing complaint that "only offers vague and conclusory allusions to 'customs' and 'policies.'"). The Court will therefore dismiss the claims in Count X. *See Bright v. Gallia County, Ohio*, 753 F. 3d 639, 660 (6th Cir. 2014).

The second and third claims are found in Counts X and XVI. In the former, Sawyer alleges that FFD Chief Knoll, BCSD Sheriff Helmig, and the unnamed FPD Chief "refused to adequately to train, direct, supervise, control or teach integrity to their respective underlings." [R. 8 at 32, ¶ 85.] In the latter, Sawyer similarly contends that the city and county were

---

[15] Notably, this assertion directly contradicts the body of Sawyer's complaint where he alleges that officers repeatedly acted in a manner contrary to – not pursuant to or consistent with – unidentified policy. *See* [R. 8 at 2, 4-6, 26-27.] His factual allegations therefore undermine rather than support this theory of liability.

negligent by failing to adequately train and supervise their officers. *See* [R. 8 at 34.][16]  These kinds of "failure to train or supervise" claims are another method to impose liability upon a municipality under the *Monell* rubric. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Such claims are properly directed towards a municipality, not individual defendants.  An assertion that a supervisory government official failed to adequately train or supervise his or her subordinates typically arises not as a freestanding claim against the supervisor, but as one of several ways for a plaintiff to show that a policy or custom of a city or county caused the plaintiff's injury so that municipal liability may attach. *Cf. Shadrick v. Hopkins Co., Ky.*, 805 F. 3d 724, 737 (6th Cir. 2015); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

In contrast, each government official is liable only for her own misconduct, not for that of her subordinates. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  So to hold an individual liable for a violation of another's civil rights, the plaintiff "must allege that the defendant was personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (cleaned up; *citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)).  A plaintiff may demonstrate that a supervisor was personally involved based upon the actions of another

---

[16]  Sawyer actually directs the claim in Count XVI toward FPD, FFD, and BCSD. *See id.*  But in Kentucky, police and fire departments are not independent legal entities capable of being sued; instead, they are merely administrative departments operated by the respective city or county.  Nonetheless, the Court liberally construes this claim as asserted against the City of Florence and Boone County, Kentucky. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.").

only by alleging sufficient and specific facts which indicate that the defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct ... of his subordinates through the execution of his job functions." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (*quoting Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)). Thus, a "failure to train or supervise" claim asserted directly against an individual supervisory official should be disapproved to prevent it from circumventing the well-established rule that supervising officers are not liable for the actions of their subordinates under the doctrine of *respondeat superior*. *Accord Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); *Peatross*, 818 F. 3d at 242 ("A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.").

Further, Sawyer's conclusory allegation that the identified defendants "refused to adequately train or supervise" any of their subordinates fails to state a claim. In a failure-to-train claim, a plaintiff must allege in his complaint: (1) a clear and persistent pattern of illegal activity; (2) which the municipality knew of or should have known about; (3) yet remained deliberately indifferent about; and (4) that the municipality's custom was the cause of the deprivation of the plaintiff's constitutional rights. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016). Sawyer's allegations fall well short of meeting these requirements.

First, Sawyer's allegation that there was inadequate training or supervision is wholly conclusory. Where a complaint "is devoid of any allegations identifying the allegedly deficient policy, how existing policies and procedures are inadequate or otherwise place inmates' serious

medical needs at risk, or [defendant's] awareness of the deficiency in existing policy and the risk it posed[,]" the complaint fails to state a viable claim for failure to train or supervise. *Dishman v. Correct Care Solutions, LLC*, No. 17-CV-98-HRW, 2018 WL 3097319, at *5 (E.D. Ky. June 22, 2018). Here, Sawyer makes no allegation at all about what training or supervision was actually provided by Boone County and the City of Florence; why it was not adequate; and when it had resulted in the violation of another's civil rights on a prior occasion. Sawyer points only to what happened to him during the standoff, nothing else.[17] Faced with similar allegations, the Sixth Circuit has emphasized that "the danger in appellants' argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005).

Further, the municipality must be aware of past instances of unconstitutional conduct by their employees. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (cleaned up). It must then react to them with indifference; "a showing of simple or even heightened negligence will not suffice." *Doe v. Patton*, 381 F. Supp. 2d 595, 601 (E.D. Ky. 2005) (cleaned up), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006). Sawyer alleges neither earlier instances of unconstitutional conduct nor

---

[17] *See* [R. 8 at 32 ¶84 ("It was the policy and practice of the city of Florence and the County of Boone to authorize certain officers, firemen, and sheriff deputy's, including the defendants to cover up the use of excessive force and criminal negligence despite the lack of probable cause to even be at the Plaintiff's home and he posed no risk or harm at the time of the excessive force and criminal negligence as his hands were raised and possessed no weapon.").]

municipal awareness of and indifference to them.  Instead, he plainly seeks to impose municipal

liability based solely on the events of January 16, 2021.  Because Sawyer's threadbare

allegations manifestly fail to meet the requirements to adequate plead a claim for failure to train

or supervise, the claims in Count X and Count XVI will be dismissed.  *Cf. Howard v. City of

Durham*, 487 F.Supp.3d 377, 439-40 (M.D.N.C. 2020) ("Without evidence of a pattern of

constitutional violations, a plaintiff will struggle to establish municipal liability, as a

decisionmaker can hardly be said to have deliberately chosen a training program that will cause

violations of constitutional rights if the decisionmaker lacks notice that the training is

deficient.").

Sawyer's fourth claim in this grouping is found in Count XIV, where he asserts that the

city and county defendants are liable for the intentional torts committed by their officers pursuant

to the doctrine of *respondeat superior*.  *See* [R. 8 at 33-34.]  This count must be dismissed for

several reasons.  First, *respondeat superior* is not an independent claim, but is instead a theory of

liability, a way of holding one defendant accountable for the actions of another.  *Prunte v.

Universal Music Group*, 484 F.Supp.2d 32, 43 (D.D.C. 2007) ("*Respondeat superior* is not itself

a cause of action or a cognizable legal claim.").  Therefore a stand-alone claim should be

dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Baker v. Baxa Corp.,*

No. 09-CV-02034 MSK–KLM, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011) ("This is not to

say that Ms. Baker's *respondeat superior* allegations do not belong in the Complaint, but simply

that they are not properly styled as a discrete 'claim' for relief.  Accordingly, to the extent that

the *respondeat superior* allegations purport to be a stand alone 'claim,' such 'claim' is dismissed

under Rule 12(b)(6)."); *McCormack v. City & Cnty. of Honolulu*, No. 10-CV-00293 BMK, 2014

WL 692867, at *3 (D. Haw. Feb. 20, 2014), *aff'd*, 683 F. App'x 649 (9th Cir. 2017).

Second, with respect to Sawyer's civil rights claims, *respondeat superior* is not an available theory of liability at all. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* ... In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer."); *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 565 (6th Cir. 2018) (noting that a municipality cannot be held liable for constitutional torts based purely on *respondeat superior*).

*Respondeat superior* can apply, if at all, only to Sawyer's claims asserted under state law. Most of these claims, however, have already been dismissed. These include his claims in Count VII for "criminal negligence," "arson," and "attempted murder" (construed as claims of negligence, assault, and battery), and his tort of outrage claim in Count XII. Because it is a form of derivative rather than primary liability, "where the liability of an employer in tort rests solely on the doctrine of *respondeat superior*, a judgment on the merits in favor of the employee is a bar to an action against the employer." *Niederreuther v. Schifter*, No. C95-4411 TEH, 1998 WL 409876, at *2 (N.D. Cal. July 14, 1998). Here, the only state law claims remaining are those set forth in Count XVIII, discussed immediately below. *See* [R. 8 at 35.] But Sawyer asserts those claims against *all* defendants, including the supervisors and municipalities, rendering the invocation of *respondeat superior* in this count redundant with respect to them. The Court will therefore dismiss Count XIV on both substantive and procedural grounds.

**F**

In Count XVIII, Sawyer asserts claims for "Malicious Abuse of Process, False Arrest, Over Charging, Cover Up and Perjury" against "all named Defendants." In a single brief paragraph Sawyer alleges that all 34 defendants "used the criminal process [] in order to

intimidate the Plaintiff and to dissuade the Plaintiff from asserting the Plaintiffs rights against the Defendant and in order-to cover up their own wrong doing and to avoid civil and criminal liability for their own acts." [R. 8 at 35.] This omnibus claim is subject to dismissal because Sawyer makes no effort to clarify that sweeping and conclusory claim by making particularized factual allegations against each of the 34 named defendants and tying them to an identifiable legal claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (noting that while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) ("In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must make a claim and plead facts plausibly showing that the plaintiff is entitled to relief. Merely pleading sufficient facts is not enough, but courts are generous in their interpretation of a complaint to identify causes of action so long as it provides fair notice to the defendant of the claim."); *Reilly v. Vadlamudi*, 680 F. 3d 617, 626 (6th Cir. 2012) ("Plaintiff must state a plausible constitutional violation against each individual defendant - the collective acts of defendants cannot be ascribed to each individual defendant.").

The abuse of process claim must be dismissed for two additional reasons. First, Sawyer offers no indication whether he intends to assert this claim under federal or state law. If the former, the Sixth Circuit "has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983." *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015). A federal claim would therefore be dismissed for failure to state a claim. If the latter, such a claim under Kentucky law can be asserted independently from a malicious prosecution claim. *See Garcia v. Whitaker*, 400 S.W.3d 270, 277 (Ky. 2013). However, Sawyer's allegations fail to state an abuse of process claim under Kentucky law. *Cf. Mullins v. Richards*, 705 S.W.2d 951,

952 (Ky. Ct. App. 1986) (holding that alleged ulterior motive in securing a criminal indictment is insufficient to state an abuse of process claim absent an affirmative attempt by defendants to secure advantage from the plaintiff outside the criminal proceeding itself).  Sawyer makes no allegations to support a claim under that theory.

Further, Sawyer's abuse of process claim is barred by the applicable one-year statute of limitations.  *See Conley v. Frye*, No. 17-CV-44-HRW, 2018 WL 771523, at *2 (E.D. Ky. Feb. 7, 2018) ("Abuse-of-process claims are subject to the one-year limitations period.  Unlike an action for malicious prosecution where a legal termination of the prosecution complained of is essential, in an action for abuse of process it is not necessary, ordinarily, to establish that the action in which the process issued has terminated unsuccessfully.  For this reason, a cause of action for abuse of process has been generally held to accrue from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued.") (cleaned up).  Because the acts giving rise to the claim necessarily occurred in January 2021 prior to the institution of criminal process, the claim was not timely asserted and must be dismissed.  *See also Maqablh v. Heinz*, No. 3:16-CV-289-JHM, 2016 WL 7192124, at *8 (W.D. Ky. Dec. 12, 2016); *DeMoisey v. Ostermiller*, No. 2014-CA-001827-MR, 2016 WL 2609321, at *15 (Ky. Ct. App. May 6, 2016) (unpublished disposition).

Sawyer's false arrest claim is likewise time barred.  The statute of limitations for false arrest claims under Kentucky law "begins to run at the time the plaintiff becomes detained pursuant to legal process."  *Hall v. City of Williamsburg, Kentucky*, No. 6: 16-CV-304-DCR, 2017 WL 2274327, at *7 (E.D. Ky. May 24, 2017) (*citing Dunn v. Felty*, 226 S.W.3d 68, 74 (Ky. 2007)).  The dockets from the three district court proceedings, *see* note 2, *supra*, establish that Sawyer had been arraigned on all of his criminal charges by February 9, 2021, at which time he

became detained pursuant to legal process.  The limitations period to assert such a claim is one year under Ky. Rev. Stat. Ann. 413.140(1).  Sawyer did not file his complaint in this action until May 2022, rendering these claims time barred.

Sawyer offers no direct statement indicating the basis for his remaining claims of "overcharging," "cover up," and "perjury" in this count.  But he uses these or similar phrases throughout the body of his complaint where he contends that the investigating officers filed charges without probable cause; misrepresented, altered, or destroyed evidence; and made false statements in reports and while giving testimony during the probable cause hearing and grand jury proceedings.  *Cf.* [R. 8 at 5, 7-8, 10-11, 13-16, 18-21.]  These claims appear to be merely a different way of phrasing Sawyer's claims arising from his prosecution, and the Court is unable to discern, under either federal or state law, any plausible independent civil claim for the conduct described.  For example, perjury is a criminal offense, not a civil claim, and courts have therefore consistently dismissed such claims.  *Cf. Holt v. Parker*, No. 2:12-CV-424, 2012 WL 2562385, at *2 (S.D. Ohio June 29, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 3527710 (S.D. Ohio Aug. 15, 2012); *see also Boodram v. Coomes*, No. 1:12-CV-00057-JHM, 2016 WL 3248518, at *5 (W.D. Ky. June 10, 2016) ("To accept ... that [KRS §] 446.070 authorizes civil recovery [for perjury in a legal proceeding], we would have to conclude that the statute abrogates the judicial-proceeding privilege.  But Kentucky courts have consistently recognized the privilege notwithstanding [KRS §] 446.070.") (*quoting Heavrin v. Nelson*, 384 F.3d 199, 203 (6th Cir. 2004)).  Because these remaining claims, to the extent they are viable at all, are duplicative of those in the two remaining undismissed counts [Count III and Count V], the Court will dismiss them as redundant.

25

**G**

In Count III and Count V Sawyer claims that during the standoff and the ensuing investigation, numerous officers credited ambiguous or false statements from Baker, "misled" the investigation, tampered with or removed evidence, filed unwarranted or false charges, and committed perjury. *See* [R. 8 at 26-28.]

The Court must first ascertain the precise constitutional basis for these claims. In the titles of both counts, Sawyer refers to these as "Section 1983 Claim[s]" for "Due Process Violations." *See id*. At the conclusion of each claim, Sawyer invokes the Fourth, Fifth, and Eighth Amendments. *See* [R. 8 at 27, 28.] The Eighth Amendment was not violated because the events complained of occurred before Sawyer was convicted and imprisoned. *See* note 10, *supra*. The Fifth Amendment was not violated because Sawyer complains about the actions of state officers, not federal ones. *See id*. The Fourth Amendment, however, applies to a claim of "malicious prosecution."[18] *See Thompson*, 142 S. Ct. at 1337 ("... the gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause.").

Through Sawyer's reference to the Fifth Amendment and to "Due Process Violations," *see* [R.8 at 26, 28], the Court infers that Sawyer may wish to press claims for due process violations under the Fourteenth Amendment. *See also* [R. 8 at 2 ("The Plaintiff seeks redress for violations of ... the Plaintiff's right to be free from malicious prosecution, malicious abuse of process, and unlawful seizure as provided for by the Fourth and Fourteenth Amendments to the Constitution of the United States ...").] The substantive due process protections of the

---

[18] The Court notes its agreement with more recent judicial antagonism to that misleading label. *Cf. Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010) ("designating the constitutional claim as one for 'malicious prosecution' is both unfortunate and confusing."). Nonetheless, that nomenclature is now firmly embedded in the jurisprudence, so the Court reluctantly perpetuates its use to facilitate discussion.

Fourteenth Amendment do not supply the basis for a malicious prosecution claim. *See King v. Harwood*, 852 F.3d 568, 580 n.4 (6th Cir. 2017) (*citing Albright v. Oliver*, 510 U.S. 266 (1994)). But in many federal circuits, including the Sixth, the Fourteenth Amendment provides a foundation for a freestanding claim that officers fabricated evidence. *Cf. Tanner v. Walters*, 98 F.4th 726, 732 (6th Cir. 2024); *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017); *Halsey v. Pfeiffer*, 750 F.3d 273, 292-94 (3d Cir. 2014). The Court therefore evaluates Sawyer's allegations under both frameworks.

Under the Fourth Amendment, a claim of malicious prosecution may lie when officials engage in the "wrongful investigation, prosecution, conviction, and incarceration" of the plaintiff. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). To succeed on such a claim, the plaintiff must establish that: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) the charges were not supported by probable cause; (3) the prosecution deprived the plaintiff of liberty independent from the initial seizure; and (4) the criminal proceedings were resolved in the plaintiff's favor. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017); *Jackson v. City of Cleveland*, 925 F.3d 793, 820 (6th Cir. 2019).

The first requirement can be satisfied where the officer "participate[s] in a way that aids in the decision [to prosecute], as opposed to passively or neutrally participating." *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017) (*quoting Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)).

With respect to requirement that the prosecution lacks probable cause, "probable cause to initiate criminal prosecutions exists where facts and circumstances are sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Webb*, 789 F.3d at 666. The Supreme Court has repeatedly emphasized that this is not a "high bar" to clear.

27

*Kaley v. United States*, 571 U.S. 320, 338 (2014).  After all, "it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *District of Columbia v. Wesby*, 583 U.S.48, 57 (2018) (cleaned up).

Where, as here, the defendant is indicted by a grand jury on the charges, the indictment presumptively establishes probable cause.  *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (noting the general rule that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause" for a prosecution).  However, a grand jury indictment tainted by fabricated evidence does not establish probable cause.  *Manuel v. City of Joliet*, 580 U.S. 357, 369 n.8 (2017).  A malicious prosecution plaintiff can rebut the presumption of probable cause established by a grand jury indictment by showing that:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony ... the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017).  *See also Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) ("Since [*Rehberg v. Paulk*, 566 U.S. 356, 367-70 (2012)], we have clarified that a plaintiff may overcome the presumption if the defendant fabricates evidence or knowingly or recklessly makes materially false statements outside the grand-jury context.").  Thus, an allegation that evidence was fabricated can be relevant in a Fourth Amendment malicious prosecution claim to undermine the presumption of probable cause independent of a Fourteenth Amendment claim for fabrication of evidence.

28

The third element requires the plaintiff to show that he was deprived of his liberty beyond the initial detention. This requirement is not demanding, and is satisfied if the plaintiff can point to any restriction on his movement (such as pretrial detention), restriction of travel, or any other "restraints not shared by the public generally." *McDonough v. Smith*, 588 U.S. 109, 117 n.4 (2019) (*quoting Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301 (1984)). *See also Sykes*, 790 F.3d at 654; *Johnson v. City of Cincinnati*, 310 F.3d 484, 493 (6th Cir. 2002). Still, in cases like this one – where the defendant was detained based upon several charges, some of which resulted in conviction and others which did not – there remains the question whether (and how) the malicious prosecution plaintiff can demonstrate that he was deprived of his liberty based upon the dismissed charges. *See Chiaverini*, 144 S. Ct. at 1748 ("We leave for another day the follow-on question of how to determine in those circumstances whether the baseless charge caused the requisite seizure.").[19]  In this case Sawyer was detained pretrial, so the Court assumes this element is satisfied with respect to his malicious prosecution claims.

The fourth and final requirement is that the criminal proceedings were resolved in the plaintiff's favor. *Miller*, 866 F.3d at 389. As previously noted, a termination of the prosecution without a conviction satisfies this requirement. *See* note 9, *supra*. Because only the four charges

---

[19]  In the analogous context of a fabrication of evidence claim under the Fourteenth Amendment, this Court has noted that the Sixth Circuit does not appear to have authoritatively weighed in on the question. *See Friskey v. Bracke*, No. 2:17-CV-56-WOB, 2020 WL 465026, at *9 (E.D. Ky. Jan. 28, 2020), *aff'd*, No. 20-5187, 2020 WL 8614220 (6th Cir. Sept. 30, 2020); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). Other circuit courts of appeal have reached divergent conclusions. *Compare Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014) ("Fabrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty - *i.e.*, his conviction and subsequent incarceration - resulted from the fabrication.") *with Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016) ("an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged.").

that were dismissed against Sawyer as part of his plea agreement remain at issue, the Court again assumes that this element satisfied for purposes of discussion except where noted.

With respect to a fabrication of evidence claim, "[t]he Fourteenth Amendment bars an officer from knowingly creating false evidence to obtain a conviction." *Sanford v. City of Detroit*, 815 F. App'x 856, 859 (6th Cir. 2020). Unlike a malicious prosecution claim, "[a] plaintiff does not need to show that the government lacked probable cause to prevail on a fabrication of evidence claim." *France v. Lucas*, 836 F.3d 612, 629 (6th Cir. 2016). Instead, the Fourteenth Amendment is "violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2014).[20] Because this type of claim is focused on "the potential effect of knowingly fabricated evidence on the trier of fact," *Tanner*, 98 F.4th at 733, there must be some indication that fabricated evidence was both inculpatory and material to the ensuing prosecution. *Cf. Kando v. City of Long Beach*, No. 21-56199, 2023 WL 3092304, at *2 (9th Cir. Apr. 26, 2023) (*citing Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021)); *Meidinger v. Ragnone*, 661 F. App'x 449, 450 (8th Cir. 2016).

With those background principles established, the Court considers Sawyer's claim against each of the eleven remaining defendants in turn. The Court will first dismiss the claims against BCSD Sheriff Helmig as a defendant in both of these counts. Sawyer makes no

---

[20] The foregoing descriptions of the claim suggest that the fabricated evidence must have led to an eventual conviction. In the case at hand, *Heck* bars a fabrication of evidence claim with respect to the charges Sawyer pleaded guilty to and was convicted of, so his Fourteenth Amendment claim is necessarily limited to the charges that were dismissed as part of his plea agreement. Is a fabrication of evidence claim viable where Sawyer was not convicted of those charges? Several courts have held that it is, and this Court assumes as much. *Cf. Black*, 835 F.3d at 370 ("We see no reason to require a conviction as a prerequisite to a stand-alone due process claim against a state actor for fabrication of evidence."); *Ashley v. City of New York*, 992 F.3d 128, 138 (2d Cir. 2021) ("The plaintiff need not have been tried to make out this claim so long as some deprivation of liberty occurred."); *Harris v. Town of S. Pines*, 110 F.4th 633, 646 (4th Cir. 2024).

substantive factual allegations of wrongdoing at all against Helmig, and names him as a defendant solely because he was the supervisor of many of the officers. But as noted above, the doctrine of *respondeat superior* is not an available theory of liability in a Section 1983 claim. *Polk Cnty.*, 454 U.S. at 325. Because Sawyer does not allege any personal involvement by Helmig in the conduct complained of in these counts, the Court will dismiss these claims against him. *Burley v. Gagacki*, 729 F.3d 610, 619-20 (6th Cir. 2013).

In Count III, Sawyer accuses BCSD Sergeant Jared Demoisey of "coaching" Deputy Justine Bates to press false or unsubstantiated charges of sexual assault or misconduct against him. *See* [R. 8 at 27.] But the facts Sawyer alleges about Demoisey undermine rather than support that claim. Sawyer states that during the standoff, Amanda Baker told Deputy Bates that she and Sawyer had been intimate the night before but that she (Baker) had not wanted to be. *See* [R. 8 at 7 ¶ 39.] When Deputy Bates asked Baker if Sawyer had "forced himself" on her, Baker replied "he held me." *Id*. Sawyer then recounts his own statement, which he made to Deputy Bates the next morning, that Baker "[said] first we weren't intimate then Amanda said we were." *Id*. Sawyer characterizes Baker's statements regarding whether she and Sawyer were intimate the night before as contradictory, although his narrative summary of her statements does not so indicate.[21] *See id*. Sawyer's only substantive factual allegation against Demoisey is that during a subsequent conversation between Demoisey and Deputy Bates, Demoisey indicated to her that to file a charge for sexual assault or unwanted sexual contact, Amanda Baker's statements needed to be "free," presumably meaning clear or unequivocal regarding her consent. *See* [R. 8 at 7, ¶ 39.]

---

[21] Baker's statement that "[Sawyer] held me" was responsive to Deputy Baker's question about whether Sawyer used force to compel sexual intimacy, not whether such intimacy occurred at all.

The facts alleged by Sawyer fail to state a claim against Demoisey.  First and foremost, Sawyer was never indicted for sexual assault or any other criminal offense based upon the events just described.  Because Sawyer was never indicted based upon Baker's allegations, no malicious prosecution claim is stated.  *See Kue v. North*, No. 23-2100, 2024 WL 3537650, at *5 (6th Cir. July 25, 2024) ("So there is no basis for a malicious-prosecution claim without, as the name implies, a prosecution."); *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (noting that prosecutors, not police officers, "generally commence or continue criminal proceedings against defendants.").  Second, Demoisey's statements to Deputy Bates in no way support his later assertion that Demoisey "coached" Bates to press false or unsubstantiated charges.  To the contrary, Sawyer's factual allegations indicate that Demoisey urged a cautious approach to charging based upon clear and credible allegations. There is no allegation that Demoisey either created or elicited fabricated evidence.  Sawyer therefore alleges no facts indicating that Demoisey was supportive of filing such charges, and hence that he "made, influenced, or participated in the decision to prosecute."[22]

Next, in Count III Sawyer alleges that BCSD Deputy Joseph Savelli, BCSD Deputy Chad Wylie, and BCSD Sergeant Kevin Vaske contravened "BWV policy" by turning off their body cameras during a portion of their respective conversations with Amanda Baker.  *See* [R. 8 at 26-27.]  Specifically, Sawyer alleges that during the standoff Savelli spoke with Baker about Sawyer's actions that day, including whether he possessed a firearm.  Baker told Savelli that she had seen Sawyer in possession of a 40 caliber handgun earlier that day and that Sawyer was high

---

[22] Even if this were not so, the officers possessed more than adequate information supportive of probable cause.  *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (holding that a victim's statement that the defendant "had abused her alone is sufficient to establish probable cause" to arrest the defendant for domestic violence); *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (probable cause is met if the officer has "reasonably trustworthy information" that the defendant has committed an offense).

on methamphetamines.  Sawyer alleges that Savelli turned off his body camera during a portion of this conversation.  [R. 8 at 4, ¶¶ 25, 27.]  With respect to Deputy Wylie and Sgt. Vaske, Baker told Vaske that Sawyer had been at her home for two days but that she had been "unable to call for help."  Minutes later, Vaske turned off his body camera.  [R. 8 at 4, ¶ 28.]  Sawyer further indicates that approximately thirty minutes later Vaske encouraged Deputy Wylie to ask Baker whether Sawyer had "imprisoned" her or held her against her will.  [R. 8 at 5, ¶ 32.]  Wylie then spoke with Baker for approximately 90 seconds before he turned his body camera on.  At that point, Baker told Wylie that Sawyer had been "texting about their sex."  Sawyer alleges that Wylie turned off the audio for the next six minutes.  [R. 8 at 5, ¶32.][23]

As noted above, the officers' inadvertent or intentional failure to capture all of these interactions on their body cameras during the course of a standoff that lasted for more than six hours did not itself violate any of Sawyer's constitutional rights.  *See* page 6-7, *supra*.  The gist of Sawyer's claim is that the fact that the body cameras were turned off for portions of these discussions "caus[ed] the Plaintiff a massive amount of hardship by not having all of the lies perpetuated against him on video."  [R. 8 at 27, ¶ 64.]  That may or may not be so, but it does not state a claim for violation of any of Sawyer's constitutional rights, let alone for malicious prosecution or fabrication of evidence.  First, Sawyer's allegations do not indicate that the

---

[23]  Throughout this portion of his complaint, Sawyer repeatedly contends that Baker said nothing to give police the impression that he had held Baker against her will.  But his own recitation of Baker's statements refutes that claim.  According to Sawyer, when Baker called 911 she told the dispatcher that Sawyer had guns and used drugs.  [R. 8 at 3, ¶ 16.]  When police arrived, Baker told them that she had been unable to call for help for two days, implying that Sawyer had prevented her from doing so.  *Id*. at 4, ¶ 28, ¶ 29.  Baker also told police that Sawyer had put a gun to her head.  *Id*. at ¶ 29.  Shortly thereafter Baker told police that Sawyer "held her and she didn't want to have sex with" him.  [R. 8 at 5, ¶ 31.]  Baker also told police "that we were texting earlier and at the same time telling them that [Sawyer] had basically not let her leave and was with him until she 'escaped' and called 911."  *Id*. at 6, ¶ 34.  While Sawyer disparages the accuracy and credibility of Baker's statements at length, he acknowledges that she made them to police.

actions or inactions of the officers aided in the decision to file particular charges as required to show active participation in the prosecution. *See Webb*, 789 F.3d at 660. Likewise, the officers' *failure* to create video evidence – perhaps favorable to Sawyer, perhaps not – by recording the entirety of their interactions with Baker is not the same as the *affirmative creation* of false evidence, as is required to rebut the presumption of probable cause resulting from a grand jury indictment. *See King*, 852 F.3d at 587-88. The Sixth Circuit has recently reinforced this distinction:

> Lester attempts to overcome th[e probable cause] presumption by arguing that Detective Roberts recklessly failed to disclose to the prosecutors and the grand jury problems with Jasmine Williams's statements. But this purported "omission" of exculpatory evidence (as opposed to affirmative "false statements") may not suffice to defeat this presumption. The Constitution does not require prosecutors to present any exculpatory evidence to the grand jury. Courts in this context thus have held that "failing to disclose potentially exculpatory evidence differs from affirmatively falsifying evidence."

*Lester v. Roberts*, 986 F.3d 599, 608-09 (6th Cir. 2021) (cleaned up); *see also Costino v. Anderson*, 786 F. App'x 344, 348 (3d Cir. 2019); *Burgess v. DeJoseph*, 725 F. App'x 36, 39-40 (2d Cir. 2018). Sawyer's allegations against these officers fail to state viable malicious prosecution or evidence fabrication claims, and they will therefore be dismissed.

In Count III, Sawyer last alleges that BCSD Deputy Justine Bates drafted the criminal complaint against him even "after catching the allege[d] victim in lies when there was no other evidence to suggest the plaintiff did anything wrong[,] then adding her own words to the Criminal Complaint not mentioned by the allege victim Amanda Baker ..." [R. 8 at 27, ¶ 64.] This statement encompasses two sub-claims. First Sawyer alleges that, after Baker had already talked at length to Savelli, Vaske, and two other officers, Baker told Deputy Bates that Sawyer "held her and she didn't want to have sex with [him]." *See* [R. 8 at 5, ¶ 31; at 7, ¶39.] Shortly thereafter Deputy Bates turned off her body camera because its battery was nearly depleted. *Id*.

Sawyer then states that "[l]ater on Deputy Bates catches Amanda Baker lying about this saying we weren't intimate and destroying all probable cause in this matter because there is and only ever was Ms. Bakers lying mouth as accusations towards the Plaintiff." *Id.* This is based upon a conversation Sawyer overheard the next morning when he was at the hospital, when he alleges that he heard Deputy Bates "saying she caught the victim lying about being intimate then not being intimate. She was caught lying in the field before the false criminal complaint was even drawn up." [R. 8 at 6, ¶ 33.][24] In the second sub-claim, Sawyer complains that even though Baker told Deputy Bates that she could not recall the exact words Sawyer used to threaten her, Deputy Bates suggested the phrase "Bitch, I'm going to kill you," a phrase Baker herself had not uttered. Sawyer implies that Deputy Bates included that phrase in the criminal complaint. [R. 8 at 7, ¶ 39.]

With respect to the first sub-claim, Sawyer's malicious prosecution and fabrication of evidence claims against Deputy Bates fail for some of the same reasons they did against Sgt. Demoisey. As previously noted, the inconsistency Sawyer perceives in Baker's statements to police regarding whether she was sexually intimate with Sawyer cannot form the basis for his claims because Sawyer was never indicted or prosecuted for a sex offense. *See Kue*, 2024 WL 3537650, at *5 ("So there is no basis for a malicious-prosecution claim without, as the name implies, a prosecution."); *Sanford*, 815 F. App'x at 859. And as noted above, Sawyer's perception that Baker's gave inconsistent statements is based upon a plain misreading of her response, one that officers were not required to accept. *Cf. Singer v. Fulton County Sheriff*, 63

---

[24] As noted above (*see* page 31 and note 21, *supra*), Sawyer views Baker's statement that he had "held her" as an admission that there was no sexual intimacy between them. But Baker's answer was in response to Deputy Bates's question whether Sawyer had used physical force to compel such intimacy against Baker's will. *See* [R. 8 at 7 ¶ 39.] When Deputy Bates asked Baker if Sawyer had "forced himself" on her, Baker replied "he held me." *Id.*

F.3d 110, 119 (2d Cir. 1995) ("We have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee."); *Kue*, 2024 WL 3537650, at *5 ("probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts.") (*quoting District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)).

Sawyer's second sub-claim, regarding the precise verbiage he used to convey his threats against Baker, must likewise fail. If Sawyer conveyed this threat on one of the several occasions he pointed a gun at Baker's head that day, *Heck* precludes its assertion now because Sawyer pleaded guilty to the resulting charge of First Degree Wanton Endangerment. *See* note 1, *supra* (May 27, 2021, Response to Bill of Particulars, at 2). On the other hand, *Heck* does not apply to Count VIII of the indictment (which charged Sawyer with Terroristic Threatening) because that charge was dismissed as part of his plea bargain. *See id.*, (April 18, 2022, Order Dismissing). But the conduct underlying that charge was based only upon Sawyer's threat to burn down Baker's home. *See id.*, (Nov. 23, 2021, Response to Motion to Sever, at 2). The complaint therefore fails to indicate that the conduct complained of resulted in or was related to a criminal charge that was actually prosecuted against him (necessary elements of both malicious prosecution and evidence fabrication claims) and dismissed (as required to avoid the application of *Heck*).

In any event, even if the articulation of Sawyer's threat was not a *verbatim* quotation, that would not by itself undermine the grand jury's probable cause determination because the facts alleged in the complaint do not suggest that the quotation was "material to the ultimate prosecution of the plaintiff" for threatening to burn down the house. After all, there was independent evidence of Sawyer's threats. *See* [R. 8 at 13, ¶ 45; at 15, ¶ 46.] *See King*, 852 F.3d

36

at 587-88; *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) (holding that demonstrably false witness statements or omissions violate the Fourth Amendment only if they are both "material, that is, necessary to the finding of probable cause," and "made deliberately or with a reckless disregard for the truth.").  In any event and with respect to both sub-claims, given the numerous other charges Sawyer faced for arson, wanton endangerment, and unlawful imprisonment, his complaint does not assert or indicate that Deputy Bates's inclusion of Baker's allegations was the proximate cause of his detention.  *See Jackson*, 925 F.3d at 815; *Kando*, 2023 WL 3092304, at *2.

        That leaves only the claims remaining in Count V.  Sawyer first claims that BCSD Detective Tracy Watson "committed countless counts of perjury."  [R. 8 at 28, ¶68.]  Specifically, Sawyer claims that Detective Watson made several false or inaccurate statements during her testimony at a probable cause hearing in January 2021 and before the grand jury in March 2021.  [R. 8 at 11-13, 17-21.]  However, and independent of other claim deficiencies, "[i]t is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."  *Spurlock v. Satterfield*, 167 F.3d 994, 1001 (6th Cir. 1999); *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012).  Indeed, "[i]n *Briscoe v. Lahue,* 460 U.S. 325 (1983), the Supreme Court concluded that 'all witnesses - police officers as well as lay witnesses - are absolutely immune from liability based upon their testimony in judicial proceedings.'" *Alioto v. City of Shively, Ky.*, 835 F.2d 1173, 1174 (6th Cir. 1987) (*quoting Briscoe*, 460 U.S. at 328).  *See also Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (recognizing that testimony at adversarial judicial proceedings is "the most historically grounded" of the functions that "are integral to the functioning of our adversarial judicial system" which merit absolute immunity shielding officials from § 1983 liability) (citations omitted).  Sawyer's claims against Detective

Watson are therefore barred by absolute immunity. *See LeFever v. Ferguson*, 567 F. App'x 426, 430 (6th Cir. 2014) ("Absolute immunity shields all testimony given in judicial proceedings, including perjured testimony."). This immunity to extends to testimony that is improper, based upon incomplete or even clearly false information, or is in any way deficient or odious. *See id.*; *Sanders v. Jones*, 845 F.3d 721, 733 (6th Cir. 2017). The claims against Detective Watson will be dismissed.

Sawyer next claims that BCSD Detective Rick Crowder committed perjury and "misled" the investigation.[25] [R. 8 at 28, ¶ 68.][26] Specifically, he alleges that in his arson report to the Fire Marshal, Crowder omitted certain statements Sawyer made to BCSD Detective Brandon Post during a post-arrest interview. *Id.* Sawyer does not identify what statements were omitted or explain their significance or materiality to the investigation. In the body of the complaint, Sawyer alleges that there were several inaccuracies in a report Crowder submitted to the fire marshal. These relate to very specific matters, including the exact time periods when Sawyer was visible to officers near a window during the standoff; when officers on the scene believed Sawyer set a fire inside the home; how many canisters of CS gas were deployed into the home and when; whether Sawyer made earlier threats to burn down the house; and when officers

---

[25] Sawyer does not allege that Crowder testified, but complains only of the accuracy and completeness of the reports he prepared. A false statement can constitute perjury only if it was made while giving testimony under oath. *Cf. Bradley v. Com.*, 53 S.W.2d 215, 217 (Ky. 1932); *Boodram v. Coomes*, No. 1:12-CV-00057-JHM, 2016 WL 3248518, at *7 (W.D. Ky. June 10, 2016). Sawyer makes no such allegation here, so despite the labels he attaches to his claims, the Court treats them as malicious prosecution and fabrication of evidence claims.

[26] In this count, Sawyer also claims that someone "planted" a torch inside the home while on the scene and removed canisters of CS gas from the home in an effort to hide the actual cause of the fire. *See id.* Sawyer's run-on sentences might suggest that he believes Crowder was the culprit. But in the body of the complaint Sawyer makes clear that Crowder "was not even there" on the night in question. *See* [R. 8 at 11, ¶ 43.] While Sawyer does not clearly direct this allegation toward a particular named defendant, he impliedly directs it towards several officers who were present on the scene after the fire was put out. *See generally* [R. 8 at 8, 14, 22-23.]

entered the home to take Sawyer into custody. *See* [R. 8 at 14-16, 19.] All of these matters relate to the arson charges to which Sawyer pleaded guilty or, perhaps, to his claims of excessive force. As noted above, however, Sawyer's excessive force claims are barred by the statute of limitations, and any claims related to the arson charges are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), rendering them premature. The Court will therefore dismiss the claims against Detective Crowder.

Sawyer next claims that following his arrest, BCSD Detective Brandon Post woke him up and interviewed him without reading him his *Miranda* rights again, then committed perjury by preparing a report of the interview and events during the standoff that contained asserted inaccuracies. [R. 8 at 28, ¶ 68.] According to Sawyer, Post's report omitted Sawyer's statement that "he didn't want to go to prison for something he didn't do"; misrepresented his statements about the reason Sawyer finally exited the smoke-filled home and whether he believed his conduct was criminal; falsely stated that Sawyer still smoked cigarettes; and included a timeline of events with asserted errors regarding his on-scene conversations with police and his efforts to exit the home through a window because of the fire and smoke. [R. 8 at 8, ¶ 41.]

An asserted failure to give *Miranda* warnings is not actionable under Section 1983; the exclusive remedy for such a Fifth Amendment violation is the exclusion at trial of any ensuing inculpatory statements. *Chavez v. Martinez*, 538 U.S. 760, 772 (2003); *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995). Post's report and its preparation did not amount to "perjury." *See* note 26, *supra*. Finally, Sawyer takes exception to matters in Post's report that relate primarily to the arson charges (to the extent they are pertinent to any specific criminal charge),[27]

---

[27]  None of the Sawyer's disagreements with Post's report relate to any of the four charges that were dismissed, which include unlawful imprisonment of Baker and her minor daughter, unlawful possession of a firearm by a convicted felon, and terroristic threatening. Sawyer therefore fails to state any viable claim for malicious prosecution or fabrication of evidence with respect to them. *Cf. Massey*, 759 F.3d at

an offense to which he pleaded guilty.  Such claims must therefore be dismissed pursuant to *Heck*.

BCSD Lieutenant Aaron Millison is also named in the title of Count V, but the text of the claim does not mention him.  *See* [R. 8 at 28.]  Sawyer elsewhere alleges that Millison and other officers were at the crime scene after the home was burned, "doing what we all know is tampering with physical evidence."  [R. 8 at 9, ¶ 42.]  Sawyer does not expressly identify what evidence he is referring to or explain how it was allegedly tampered with.  The Court assumes this claim is based upon Sawyer's allegation that CS canisters were the actual cause of the fire and that officers removed them as part of a cover up.  *Cf.* [R. 8 at 14, ¶ 45.]  Sawyer also references statements made by Millison during the standoff regarding the deployment of CS gas canisters and about smoke coming out of an open window before Sawyer exits the home.  *See* [R. 8 at 16, ¶ 46; at 24, ¶ 49.]  As with his prior claim, Sawyer's implication that Millison planted or removed evidence related to the arson charge is plainly barred by *Heck*.  *Cf. Wilkinson*, 544 U.S. at 81-82 ("A state prisoner's § 1983 action is barred (absent prior invalidation) ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration."); *McDonough*, 588 U.S. at 114 ("The statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor.").  The claims against Millison will therefore be dismissed.

---

357 (holding that false witness statements or omissions violate the Fourth Amendment only if they are both "material, that is, necessary to the finding of probable cause," and "made deliberately or with a reckless disregard for the truth."); *Lester v. Roberts*, 986 F.3d 599, 611 (6th Cir. 2021) (noting that "there is a meaningful distinction between disregarding potentially exculpatory information and disbelieving it.") (*quoting Mahnke v. Garrigan*, 428 F. App'x 630, 635 (7th Cir. 2011)).

Finally, Sawyer alleges in Count V that BCSD Sergeant Keith Begley committed perjury by filing a false report.[28]  [R. 8 at 28, ¶ 68.]  One of the falsehoods, according to Sawyer, is that the report relates Amanda Baker's statement to police officers upon their arrival at the crime scene that Sawyer had held Baker and her minor daughter against their will inside the house and that he threatened to kill Baker if she tried to leave.  Sawyer does not indicate that Begley said anything untrue; instead, he appears to believe *Baker's* statement is "false" (or perhaps merely unreliable) because she did not also make it during her 911 call or in her witness statement.  [R. 8 at 13, ¶ 45.]  Sawyer also asserts that the report does not accurately state into which particular window a CS gas canister was fired; how many CS canisters were used; who was the first officer to enter the home; into which particular rooms inside the home the officers moved just before arresting him; and when particular deputies left the crime scene after his arrest.  *See* [R. 8 at 13-14, ¶ 45, at 24, ¶ 49.]  Sawyer also disagrees with certain facts and conclusions set forth regarding the fire investigation.  *See* [R. 8 at 16-17, ¶ 46.]

Sawyer's allegations against Sgt. Begley fail for the same reasons indicated with respect to the prior defendants.  Begley's statements in his police report did not constitute "perjury."  *See* note 26, *supra*.  Most of Sawyer's allegations regarding Begley relate to the police investigation of the home fire and his assertion that officers planted or removed evidence to support the arson charge.  Because Sawyer pleaded guilty to and was convicted of that charge, his claims related to it are barred by *Heck*.  *See Jacob*, 192 F. App'x at 334; *Wischer*, 2017 WL 3723661, at *3 (dismissing under *Heck* civil complaint based upon asserted constitutional invalidity of police investigation and criminal prosecution against plaintiff).  Sawyer's allegations regarding the

---

[28] Sawyer makes additional allegations and claims against Begley in other parts of the complaint, but the Court has already addressed and dismissed them.  These include the claims arising from the assertedly improper activation of a SWAT team and his alleged on-scene direction to use an additional canister of CS gas.  *See* [R. 8 at 6-7, ¶ 38, at 16, ¶ 46.]

particulars of police actions and movements in the minutes leading up to his arrest are, perhaps, directed to his excessive force claims, but those claims have already been dismissed as barred by the statute of limitations. *See Zundel*, 687 F.3d at 281.

That leaves only Sawyer's claim that Begley should not have included in his report Baker's statement to officers that Sawyer had prevented her from leaving the house because Baker did not also make that statement when she first called 911 or in her later written police statement. Sawyer does not allege that Begley fabricated Baker's statements; indeed, he himself relays the statements Baker made to police officers shortly after they arrived. *See* [R. 8 at 4-5, ¶ 29; at 6, ¶34.] Sawyer therefore fails to state a viable claim for either malicious prosecution or for the fabrication of evidence. As for the former, probable cause is not a "high bar" to clear, *Kaley*, 571 U.S. at 338. Baker immediately told police officers when they arrived that Sawyer had detained her daughter and her self. And Sawyer provided the police with additional reason to believe that criminal activity was afoot when he fled the moment police arrived, barricading himself inside the house and refusing to leave. *See* [R. 8 at 4, ¶ 20 (Sawyer explaining that "because of his probation violation he ran back inside and closed the door in his legal residence.").] *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *Sibron v. New York*, 392 U.S. 40, 66-67 (1968) ("... deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."). This is not a case where "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion

42

mistaken regarding his recollection of the confrontation." *United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (cleaned up). Baker's statements, coupled with Sawyer's prompt flight and the absence of countervailing evidence, provided sufficient basis to support probable cause. *Wesby*, 583 U.S. at 57; *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) ("It is generally permissible to establish probable cause based on hearsay."). As for the latter claim, Sawyer does not allege that Begley misquoted or mischaracterized Baker's statements to police, but only implies that they should not have been included in the report because she did not make them repeatedly. This is not a viable foundation for a fabrication claim. *See Black*, 835 F.3d at 371-72 ("... there is a notable bar for evidence to be considered 'fabricated.' We have noted that 'testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong.' There must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith."); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010); *Halsey*, 750 F.3d at 295. The claims against Begley will therefore also be dismissed.

The Court, having thoroughly reviewed Sawyer's amended complaint [R. 8], will dismiss it for the reasons stated. The Court reiterates that the claims dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) are dismissed without prejudice.

Accordingly, the Court being otherwise sufficiently advised, it is **ORDERED** as follows:

1.    Christopher Sawyer's amended complaint [R. 8] is **DISMISSED** in accordance with this Memorandum Opinion and Order.

2.    The Court will enter judgment contemporaneously.

3.    This matter is **STRICKEN** from the docket.

This the 20th day of November, 2024.

Gregory F. Van Tatenhove
United States District Judge